IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 23-cr-00090-RMR-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    CHRISTOPHER WAYNE CLEARY,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Jena R.
Neuscheler, Assistant United States Attorney for the District of Colorado, and the
defendant, Christopher Wayne Cleary, personally and by counsel, Assistant Federal
Public Defender Joshua Lilley, submit the following Plea Agreement pursuant to
D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United
States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to

(1)    plead guilty to Count 1 of the Indictment charging a violation of 18 U.S.C.
§ 875(c) (Interstate Communication of a Threat); and

(2)    waive certain appellate and collateral attack rights, as explained in detail
below.

1



COURT EXHIBIT
1

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to ask for a sentence no higher than the low-end of the guidelines range for the criminal history and total offense level calculated by the Court at sentencing. The government further agrees to jointly recommend that the Court impose an appropriate set of mental health treatment conditions as part of any sentence of supervised release or supervised probation. The government further agrees to move to dismiss Count 2 of the Indictment with prejudice, against this defendant only. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)   the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 875(c);

(2)   the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 12; or

(3)   the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)     the defendant was deprived of the effective assistance of counsel; or

(3)     the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a)

3

grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

## II.   ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of Interstate Communicate of a Threat, in violation of 18 U.S.C. § 875(c), are as follows:

**First**, the defendant knowingly transmitted a communication containing a threat[1] to injure the person of another;

**Second**, the defendant transmitted the communication with the intent to make a threat, or with knowledge that the communication will be viewed as a threat; and

**Third**, the communication was transmitted in interstate or foreign commerce.

Pattern Crim. Jury Instr. 10th Cir. § 2.37.1 (2023).

## III.   STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 1 of the Indictment is: not more than 5 years' imprisonment, not more than a $250,000 fine, or both imprisonment and a fine; a maximum term of supervised release of 3 years; and a $100 mandatory victim's fund assessment fee.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

---

[1] A "threat" is a serious statement expressing intent to instill fear, which, under the circumstances, would cause apprehension in a reasonable person, as distinguished from a mere political argument, idle talk, exaggeration, or something said in a joking manner. It is not necessary that the defendant intended to carry out the threat, nor is it necessary that the defendant had the ability to carry out the threat. Pattern Crim. Jury Instr. 10th Cir. § 2.37.1 (2023).

## V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

On July 21, 2022, at approximately 9:34pm MT, Christopher Wayne Cleary placed a telephone call to an e-commerce company. A customer services representative with the initials C.M. answered Cleary's telephone call. At the time of this telephone call, Cleary was located in the state of Colorado and C.M. was located in the state of Texas. The telephone call was recorded. During the recorded telephone call, Cleary stated that he had been "screwed out of four hundred dollars" in connection with a scooter purchase and asked to speak with a supervisor. The following exchange then occurred:

> C.M.: Now . . . I can definitely get you to a supervisor. They're not available on the phones right away, but we can request to call for you.
>
> Cleary: Okay, well some-somebody's gonna see me 'cause I-**I'm about to kill everyone-one of you motherfuckers. I'm gonna find out what**

5

**office you guys are, I'mma shoot up the fucking place.** Motherfucker yo-you guys are messing with the wrong motherfucker.

C.M.: So, as I was saying, sir, if you'd like to speak to a supervisor, I can request someone call you back, and they would call you back within twenty four hours.

Cleary: Oh yeah, yeah go ahead and do that, but you guys think you're gonna fucking rob me out of four hundred fucking dollars and you're gonna get away with it, oh hell no. **Have you seen the news? Have you s-s-seen the shit people fucking flip out for? Fucking, I'm not fucking play with.**

C.M.: Okay, so what I will do-

Cleary: You wanna rob me for four hundred fucking dollars. I don't know what kind of scam you guys are fucking running.

C.M.: Okay, so what I will do is go ahead and request a call back for you is this the best number to-

Cleary: piece of shit.

C.M.: What I'm trying to ask, sir, is this the best number to contact you at?

Cleary: Yeah! Yeah, yeah this is my fucking phone number. Fucking come see me, motherfuckers. Fucking rob four hundred dollars.

C.M.: Okay, sir. I'm going to go ahead and request a callback for you, they will be calling you back-

Cleary: yeah, I'm gonna call you back all fucking night! I'mma call you all motherfucking day. I'mma harass you motherfuckers 'til you motherfuckers change your number. I'mma know every single one of you motherfuckers by, uh, by name, personally.

During a subsequent interview, C.M. stated that C.M. became very upset during this

telephone call and was concerned by Cleary's statements regarding a shooting.

Cleary admits that he made a threat to injure others during his July 21, 2022

telephone call to C.M. Cleary further admits that he intended to make a threat or knew

that his statements would be viewed as a threat.

6

In addition to the telephone call to C.M., Cleary placed approximately 30 other telephone calls to the e-commerce company between July 21, 2022, and August 5, 2022 (collectively, the "additional telephone calls"). During the additional telephone calls with other customer services representatives, Cleary admits that he made more than two threats to injure others.

## VI.   ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a)   Under Section 2A6.1(a)(1), the base offense level is 12.

b)   Two points are added because the offense involved more than two threats. U.S.S.G. § 2A6.1(b)(2)(A).

c)   The adjusted offense level is 14.

7

d)   Two points are subtracted based on the defendant's acceptance of responsibility. U.S.S.G. § 3E1.1(a). The resulting total offense level is 12.

e)   The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category VI.

f)   The career offender/criminal livelihood/armed career criminal adjustments do not apply.

g)   The advisory guideline range resulting from these calculations is **30-37 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

h)   Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $5,500 to $55,000, plus applicable interest and penalties.

i)   Pursuant to guideline § 5D1.2(a)(2), if the Court imposes a term of supervised release, that term should be at least one year but not more than three years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no

other promises, agreements or "side agreements," terms, conditions, understandings, or

assurances, express or implied. In entering this agreement, neither the government nor

the defendant has relied, or is relying, on any other terms, promises, conditions or

assurances.

Date: 3/5/24

Christopher Wayne Cleary
Defendant

Date: 3/5/24

Joshua Lilley
Attorney for Defendant

Date: 3/5/24

Jena Neuscheler
Assistant U.S. Attorney

9